## TOWNSEND & a. v. BURNHAM.

In order to charge a parent with supplies furnished to his minor child without his direction, some clear and palpable omission of duty on the part of the parent must be shown.

A father cannot be charged for supplies furnished a son after he arrives at age, unless there is authority given to obtain the same on his credit.

A student at Yale College, the son of B., in this State, procured articles of clothing at New-Haven soon after he arrived at age, and they were credited and charged to him. He had made no purchases of the vendors previous to that time, and his father had never permitted him to procure any thing of any one on his credit. He supplied him with money while in college, with which to pay his bills, to the amount of $1700, and he paid no bills at New-Haven except as he gave his son money to pay them, and it did not appear that the vendors ever knew or heard of the father.—*Held,* that the father could not be charged with the price of the goods.

ASSUMPSIT, on an account annexed for articles of clothing. The first charges are dated July 5, 1850, and the last August 14, 1850. It was admitted that the articles described were ordered by Andrew J. Burnham, the defendant's son, of the plaintiffs, who were doing business at New-Haven, and delivered to him, the son, while he was in college there, and charged to him on the books of the plaintiffs, and that he was of age on the 2d day of July, 1850. The action had been referred to an

auditor, whose report the plaintiffs did not offer to the jury, and no evidence whatever was offered by the defendant.

To sustain the declaration, the plaintiffs introduced the deposition of said Andrew, taken March 14, 1853, who testified that his father sent him to New-Haven College ; that he remained there with his father's consent; that his father paid his expenses; that he purchased these goods of the plaintiffs ; that they were suitable and proper articles for his situation in life ; that he could not say whether he did or did not purchase them, expecting his father to pay for them ; that his father gave him money to pay his bills previously to the time of purchasing these articles, but none at that particular time ; that he entered college in 1847 and graduated in 1851 ; and that his father had not paid bills incurred at New-Haven since July, 1850 — though he had never refused to pay any bills till after the son graduated, in 1851 ; that in 1847, 1848 and 1849, he did not object to paying bills, but would remark to the son that he must not be extravagant.

On cross-examination, he stated that he procured the articles at the dates of the charges, and they were charged to himself ; that his father had furnished him similar articles within a year previous to those purchases ; that he could not tell how much clothing he furnished him the previous year, but considerable ; and that he had furnished him about $500 in money during that period, though some of the clothing may have been included in that sum ; that he went home at the close of every term, and procured most of his clothing of Stewart & Co., in Concord, where his father lived ; to the amount of $150 in 1849 and 1850, most of it in 1850 ; that he had some also of Johnson & Dewey to the amount of $16, about the last year of his college life.

On reëxamination by plaintiffs, the witness stated that the five hundred dollars was given him, part at a time, when he returned to New-Haven, to pay bills there ; that he carried no bills home, except some college bills ; that his father gave him one hundred dollars when he went back at the commencement of the terms, and that once in two or three weeks he would write his father

for money, and he would send it; that there were three terms each year; that his father sent him what he, his son, said he wanted; that his father desired him to keep a memorandum of his expenses, and show it to him, but he never did so.

In his second deposition, taken October 2, 1855, the son stated that he had the articles charged in the account annexed, and that on a duplicate of it, which was produced, these words at the bottom of it were in his hand writing: "I hereby certify that the above bill is correct, and that all were necessary articles."

He further stated that he had clothing of Kenevals & Hall, and a coat of Nason & Franklin, on credit, at New-Haven, but that neither had been paid for, and that he had the coat before he had the clothes of the plaintiffs; that he had about two hundred dollars' worth of clothing in 1850, at Concord, of the persons before named; that his father furnished the money to the witness, who paid the bills, which had been previously shown to the father by the witness; that he had no bills at New-Haven, except for clothing; that at Concord he hired horses of Dudley, while in college, which were paid like the others; that most of these were incurred in his sophomore and junior years, but were all paid with money furnished by the father, whether contracted before or after he was of age; that his father never refused to pay any of his reasonable bills in college, and furnish him money to pay tuition and all other reasonable bills; that the Concord stable and clothing bills were charged to the witness, and that his father first refused to pay his bills contracted while in college, after he graduated.

He further stated, on cross-examination, that the plaintiffs were anxious to have him buy, and told him to suit his own convenience as to the time of payment; that his father always refused to allow him to buy any thing on his credit, or by running him in debt, and never paid any of his debts, except by giving his son the money; that he told the plaintiffs before he left New-Haven, that he should be able to pay them soon, and they said they were satisfied, and he might suit his own convenience; that they had never called on him to pay this bill, and that he should

have paid it, had they called on him before they sued his father, and that he was well supplied with clothing at the time of this purchase, suitable for a young man in his situation.

On reëxamination, the witness said that his bills for tuition and board were about thirty-six dollars per quarter, and traveling expenses about forty dollars a year; that the clothes sued for were made to order, and that the bills for tuition, and board and washing, were paid at the commencement of each term, for the preceding term.

Mr. Bartlett, the auditor, was called by the plaintiffs, and stated the defendant was sworn at the trial before him, and testified as follows:

That he gave his son no authority to contract debts on his (the father's) credit, at New-Haven, and never paid any such bills there; that Andrew was at home every term, and was supplied with clothing here till about the time he left college; that he first knew of these bills at New-Haven just before his son graduated, and refused to pay them, because they were unnecessary; that his son was never in want when he went from home, at each term; that the money and payments for his son, while in college, amounted to about $1700, and that the money went mainly through the son's hands; that just before the son left college, he, the defendant, paid all his board bills, washing bills and borrowed money; that the defendant had given a bond to pay all his college bills; that he paid all his necessary bills; that he paid a grocery bill of two or three dollars a term, and for books and stationery; that he paid the bills in Concord, before named, about $278, in the four years; that the bills were all made out to Andrew; that his son had lived in Concord up to the time of the Auditor's hearing, March, 1853, and witness had paid his bills to that time, and that his son was then attending lectures; that he used to persuade Andrew and tell him not to get things on credit; warned him not to get any thing on credit; that it was not necessary, and that he never refused his son cash, or any thing, till the week of his graduation; that the bills in Concord were incurred without his consent; that he

knew his son was getting goods at Stewart's, and expected to pay for them, though he did not authorize it; that he did not expect him to get any at New-Haven, for he had no occasion; that he gave Andrew $1000 in 1852, and told him to pay all his debt here.

The plaintiffs also offered in evidence the following bills:

1. Johnson & Dewey's bill, for clothing, $15; beginning Dec. 26, 1850, and ending July 12, 1851.

2. Nathaniel Evans, Jr.'s bill, for clothing, $20.34; commencing September 29, 1851, receipted December 16, 1852.

3. T. W. Stewart's bill, for clothing, $158.20; commencing September 4, 1849, ending July 19, 1851.

4. Dudley & Corning's bill, for horse and carriage hire, $23.50; commencing April 11, 1850,.ending February 3, 1852.

5. Cyrus Hill's bill, for balance on hats, December 15, 1852. $4.00.

6. James Peverly's bill, for boots and gaiters, $5.50, June 20 and September 10, 1851.

7. A. J. Edmunds' bill, for coat and repairing pants, November and December, 1851, $11.00.

All these were made out in the name of A. J. Burnham, and were all filed in the defendant's hand on the back.

In the said bill of Stewart were the following charges:

1850. August 19, D. F. Coat, $18.50; August 27, S. B. Pants, $6.00; November 7, Coat, Pants and Vest, $30.00.

T. W. Stewart, called by plaintiffs, testified that he furnished Andrew J. B. the articles charged in the bill above named, and charged them to him; that the balance, $96.75, was paid December 14, 1852; that the defendant is lame and never goes out; that defendant sent for him twice, and wished to see his (the witness's) account, to see if Andrew had been buying any thing he did not need, but made no objection to paying it; that Andrew was present at the interviews, and was then studying medicine, and had no apparent means of support; that the charges and credits were to the son. The last payment his father sent to witness. A thirty dollar payment, of January 20, 1851,

Andrew said was made out of money given him by his father when going back to college.

The defendant's counsel moved for a nonsuit of the plaintiffs, because no competent evidence had been offered to sustain the declaration, and because the plaintiffs had not offered in evidence the auditor's report. The court sustained the motion, and ordered a nonsuit to be entered, to which order the plaintiffs excepted.

*H. A. & A. H. Bellows*, for the plaintiffs. It was competent for the jury to find that the order for the goods was before July 2, when the son became of age.

The son had the same authority to bind the father after as before, and the case finds that the father supported him through college, and some years after, as one of his family. He was not, in fact, emancipated. *Poutney* v. *Glover*, 23 Vt. 328.

He placed him at a distance from home, paid his bills, board, washing, borrowed money, grocer's bills, and books and stationery. The father admitted that he paid all reasonable bills, and the son testified that his father never refused to pay all reasonable bills till after he left college.

The evidence disclosed in the case was such, that the jury might find authority from the father to the son to make the contract. Story on Contracts, secs. 80 and 79; *Baker* v. *Keen*, 2 Starkie 501; *Rolfe* v. *Abbot*, 6 C. & P. 286; *Blackburne* v. *Mackay*, 1 C. & P.; *Lan & al.* v. *Wilkins*, 6 Adolp. & Ellis 718; *Byron* v. *Jackson*, 4 Conn. 288; *Farr, Assignee,* v. *Wheeler*, Grafton Co. See, also, *Risley* v. *Scarlett*, 5 Esp. 76; *Hayard* v. *Treadwell*, 1 Str. 506.

The master, once paying for goods taken up by a servant, will be evidence of authority to take up goods a second time. *Male* v. *Ewing*, 1 Esp. 61, and note; 4 Cow. Phillips' Evi., 189, and notes; *Mander & al.* v. *Congers*, 2 Starkie 281.

*Dana, Flint & Bryant*, for the defendant.

Supposing A. J. Burnham to have been a minor, even then

there was no evidence tending to show any liability on the part of the father. The case shows ·no evidence of neglect or omission of duty on his part, to provide all necessaries for the son; and the plaintiffs cannot recover on that ground. *Pidgin* v. *Cram*, 8 N. H. 350 ; *Van Valkenburgh* v. *Watson*, 14 Johns. 480 ; *Fluck* v. *Tollemache*, 11 Eng. Com. L. 8, 296.

2. A father is not liable for clothes furnished a minor without proof of a contract, express or implied ; and, in the absence of that, a promise by him to pay for them must be in writing, and for a valuable consideration. 11 Eng. Com. Law 295.

3. The case finds that the son was, at the time these goods were supplied, well furnished with clothing, suitable for a young man in his situation, and also with an adequate allowance of money to provide all necessaries. *Crantz* v. *Gill*, 2 Espinasse C. 471 ; *Rolfe* v. *Abbott*, 25 Eng. C. L. 400 ; *Cook* v. *Deoton*, 14 ditto 232.

4. The son was of age when the contract was made, and the credit was given to him alone. No liability can attach to the father, not even upon an express promise to pay. Nor even if the goods had been furnished the son at the defendant's request. *Boyd* v. *Sophington*, 4 Watts 247 ; *Wennell* v. *Adney*, 3 B. & P. 247 ; *Gordon* v. *Potter*, 17 Vermont 348 ; *Owen* v. *White*, 5 Porter 435.

5. There is no evidence whatever that the defendant authorized any credit in New-Haven, or paid any bills of clothing there ; nor that he ever held his son· out as his agent to buy goods upon his credit.

EASTMAN, J. These goods 'were furnished to Andrew J. Burnham, the son of the defendant, after he became of age, and were charged to him. For aught that appears in the case, the plaintiffs, at the time the goods were delivered, had no acquaintance with, or knowledge of the defendant ; and if he is to be charged with their payment, it must be upon the ground that Andrew J. Burnham, as the defendant's agent, had made him liable therefor.

Townsend *v.* Burnham.

The fact that the son was more than twenty-one years of age when the articles were delivered, settles the question of the liability of the defendant, upon the ground of necessaries furnished to a minor; though, had he then been in his minority, it would seem to be quite evident that the defendant would not be liable. In order to charge a parent with supplies furnished to his infant child without his direction, some clear and palpable omission of duty on the part of the parent, in not furnishing necessaries, must be shown. *Pidgin* v. *Cram*, 8 N. H. 350; *Van Valkenburgh* v. *Watson*, 13 Johns. 480. Judging from the statements in this case, there was no such omission of duty on the part of this defendant to furnish all necessary supplies, as to show any liability on that account. Nor would it seem that the articles themselves were necessary for him to have. He states in his testimony that he was well supplied with clothing at the time of this purchase, suitable for a young man in his situation.

But was there any evidence competent to show an authority in Andrew J. Burnham to purchase these goods for his father, or as his agent? Or any tending to show that there was any undertaking by the defendant, either express or implied, to pay for the same? We have read the case over carefully several times, and have been unable to find any such evidence. The young man testifies that the defendant refused to allow him to buy anything on his credit, or to run him in debt; and that he never paid any of his debts except by giving him the money to pay them with. The bills of Johnson & Dewey, of Evans, and of Stewart and others, appear all to have accrued subsequently to this transaction; and we do not discover anything in them or in the testimony connected therewith, showing that the defendant had given his son permission to contract debts on his account, or recognizing his son's acts as binding on the defendant. These bills were all charged to Andrew J. Burnham, as were also the other bills spoken of in the case, as well as the one in suit; and the credits in the various instances were given to him. In no instance were they charged to the father, and in no instance did he acknowledge his liability to pay them.

The case of *Martin* v. *The Great Falls Man. Co.*, 9 N. H. 51, is an authority upon the question. In that case a clerk of the corporation, by the name of Cutler, borrowed, without authority, a sum of money of the plaintiff, in the name of the corporation, which he converted to his own use ; and it was held that the corporation was not liable, although it was shown that the clerk had, in two or three previous instances, borrowed money of other persons, in the name of the corporation, of which the plaintiff, however, had no knowledge, which was applied to the use of the company and repaid by them. In the course of the opinion the court say that had Cutler, before the time of effecting the loan in question, frequently borrowed money of the plaintiff, and given assurances in the company's name for repayment, and had the company afterwards discharged the debts without objection, this would have afforded ground for the support of the present action against the company. But the case finds that the loan in question was the only one ever obtained from the plaintiff in the name of the company, by Cutler ; and although it is in evidence that Cutler in one or two instances effected loans in the company's name, of other persons, which were paid by the proper officer of the company, yet it does not appear that these circumstances were known to the plaintiff, and consequently they could form no inducement to him to make the loan in question on the credit of the company. The company never authorized Cutler to pledge their credit, or recognized his contracts.

And in the *Boston Iron Company* v. *Hale*, 8 N. H. 363, it was held that where one furnishes an agent with money to make a purchase, and the agent purchases the goods on credit, the principal is not liable to the vendor, notwithstanding the goods have come to his use, unless he had *previously* allowed the agent to purchase on credit, and thus authorized the vendor to trust him.

In the present case the articles were furnished very soon after the young man came of ·age, and the plaintiffs had never credited either him or the defendant with anything before. They had had no dealings with the defendant, either directly or through his

son, and there are no facts disclosed in the case which we think have a legal tendency to charge him with the payment of this debt. There must, therefore, be

*Judgment on the nonsuit.*